# IN THE COURT OF APPEALS OF IOWA

No. 24-2028
Filed April 9, 2025

**IN THE INTEREST OF R.H. and J.H.,**
**Minor Child,**

**K.H., Mother,**
    Appellant,

**C.H., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Hancock County, Karen Kaufman Salic, Judge.

A mother and father both appeal the termination of their parental rights to their twin sons. **AFFIRMED ON BOTH APPEALS**.

Jane M. Wright, Forest City, for appellant mother.

Theodore J. Hovda, Garner, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Carrie Rodriguez, Garner, attorney and guardian ad litem for minor child,

Considered without oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

In cases terminating parental rights, we often emphasize that the best interests of the children are paramount. But typically left unsaid is the related point that termination may be in the children's best interests even when their parents have not tried to harm the children and indeed may be trying their best to improve their parenting and offer a safe home. This second point comes to the fore here.

One-month-old twin boys were removed from their parents' custody after they were diagnosed with failure to thrive at their one-month checkup and their home was discovered to be unlivable—overflowing with clutter, hosting an infestation of mice, lacking finished floors, and reeking of rotting garbage and cigarettes. Despite the parents participating in many services—by most accounts earnestly and to the best of their abilities—after nine months neither was yet capable of caring for the twins alone or as a team. So the juvenile court terminated the parental rights of both to their sons. And both appeal.

On our de novo review, we agree with the juvenile court. The State proved the statutory ground for terminating the mother's and father's rights under Iowa Code section 232.116(1)(h) (2024) because the sons could not safely be returned to either parent at the time of the termination hearing. And termination of the mother's and father's parental rights is in the sons' best interest given that the sons are flourishing in their new home and both parents still struggle to develop the basic parenting skills needed to provide a safe home. We do not doubt the parents love their sons and are doing their best. But unfortunately, that is not enough—the sons need a permanent, safe home now. We thus affirm on both appeals.

## I.      Background Facts and Proceedings

The mother and father welcomed twin sons to their family in January 2024.[1] The father was in his mid-fifties; the mother was twenty-nine.  They also have an older daughter who was six years old when the sons were born.

At the twins' one-month doctor's appointment, they were diagnosed with failure to thrive because they were well below where they should have been on the growth charts.  Both had gained less than a pound since birth, weighing in at about five and six pounds respectively and putting them at the 0.01 and 0.2 percentiles.

An Iowa Department of Health and Human Services ("HHS") social worker visited the family's home to investigate further and found it "uninhabitable."  Many rooms were described as "unpassable" with clutter, boxes, and household goods piled waist high on the floor and covering "[e]very horizontal surface."  The interior exuded an overwhelming smell of cigarettes and rotting garbage.  Eventually, it was discovered that the house had an infestation of mice and was missing any finished flooring—having only unsanitary subfloors.

At first, HHS provided the parents family-preservation services and developed a safety plan for the mother and children to live with a family friend from their church while the father worked to clean up their home.  But within a week, HHS became concerned with the safety of the children even in this arrangement. The mother needed "constant prompting" to remain focused on proper feeding and would get distracted and stop after only feeding a minimal amount, even when the

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2) (2024), *with id.* §§ 602.4301(2), 602.5110.

baby would start crying for more. And the parents were not properly supporting the babies' heads when holding them, failed to practice good hygiene practices, and had used a weighted blanket when the babies were too weak for that. For these and other reasons, the juvenile court ordered the twins temporarily removed from the parents' custody and placed in foster care at the end of February. The sons were eventually both adjudicated in need of assistance. And they have remained in foster care throughout this proceeding.[2]

Since removal, the mother and father have had only supervised interactions with the sons. They have been offered, and participated in, many services to try to improve their essential parenting skills through varied educational techniques. But both parents still struggle with meeting the sons' needs without being instructed to do so by the HHS worker or services provider. Although the father's interactions with the sons seem to be better in separate visits without the mother distracting him, the father testified that it is the plan for them to "be a team parenting" the sons. And even when separated, he still needed "prompts on basic repetitive parenting skills." As for the mother, she "often loses focus on the task at hand whether it be changing a diaper or feeding the boys." And the guardian ad litem explained she "appears oblivious to their needs at times," failing to comprehend that "[t]heir fussing, whining or crying" meant "that some action in their care was needed." The guardian ad litem also noted that the mother "seems

---

[2] The six-year-old daughter was also removed, adjudicated in need of assistance, and placed with the same foster family as the sons. The mother's and father's parental rights to the daughter are not at issue in this termination proceeding; the juvenile court noted in its termination order that a decision on the daughter's permanency goal would "be made at a later date."

disconnected" from the sons during visits, referring to them as "this one," "that one," or "the other one," rather than by name. And the guardian ad litem "question[ed] whether [the parents] have made caring for their children a priority," as they seem to place other people and things above the care of the sons.

HHS has offered services to the mother and father focused on improving the cleanliness of their home so that it is safe for the sons to live in. And to be sure, some improvement has been made. Much of the flooring has been installed—mostly through the help of the parents' friends. HHS and the family-services provider have tried to help the parents implement strategies for working on the condition of the home, including a chore chart, but the mother and father "have continued to lack follow through," and "have not been able to consistently maintain progress from home check to home check."

Both the mother and father have completed parenting assessments and psychological assessments. The father has done some individual therapy, while the mother has still been working to set up individual and couples therapy.

The father works part-time—generally a couple of days a week—at a pizza restaurant and had applied for Social Security disability benefits. The mother does not work but receives around $900 a month in Social Security benefits. And she sometimes helps out at the pizza restaurant but receives compensation through free food. HHS has tried to help the mother and father with budgeting, but they continue to struggle. And most of their bills are paid by the mother's uncle.

The sons are doing well in foster care, with HHS reporting that they "have blossomed" and "are doing amazing." They both have gained weight and are now within the standard weight range for their age. One of them is meeting his

developmental milestones since being in foster care, and the other has also made significant progress.  Both boys are happy, alert, and interactive.

The State petitioned to terminate the mother and father's parental rights, and a hearing was held in December 2024.  Only the father and an HHS worker testified.  The sons' guardian ad litem recommended termination.  And the juvenile court agreed, terminating the parental rights of both parents to the sons.

First, the juvenile court found that the State proved termination was warranted for both parents under Iowa Code section 232.116(1)(h).[3]  The court reasoned that the sons were younger than three years old, had been adjudicated in need of assistance, had been removed from their parents care for at least six of the last twelve months, and "[t]here exists clear and convincing evidence that the child[ren] cannot at the present time be returned to the custody of" the mother and father.  This conclusion rested on the court's findings that the home was still "unsafe for two small, crawling children" and that the parents' inability to care for the sons made it "unsafe for these children to be alone with either parent for any length of time."  The court also found that "it is unlikely that an additional six months would be any more effective in correcting [their lack of parenting abilities] than the last nine months have been."

---

[3] Although the court's reasoning analyzed only paragraph "h," in its decretal language at the end of its ruling, the court ordered that the parents' rights were terminated under paragraphs "a" and "d" and did not mention paragraph "h."  The supreme court granted the State's motion for a limited remand to resolve the conflict in the ruling.  And on remand, the court corrected what it described as "an obvious scrivener's error," and ordered that the allegations were proved under only paragraph "h" and not under paragraphs "a" or "d."

Second, the court found that it was in the sons' best interest for both parents' parental rights to be terminated, reasoning that termination would best serve the children's "safety" and their "mental and emotional condition and needs" and would give the "best opportunity for furthering [their] long-term nurturing and growth." And third, the court declined to apply any permissive exception to termination. In rejecting the parent-child bond exception, the court explained that "[a]ny sadness the child[ren] may experience because of termination does not overcome the likely long-term hardship and neglect the child[ren] will suffer if in the care of [the mother] and [father]." Both parents now appeal the juvenile court's order terminating their parental rights to the sons.

## II.     Ground for Termination

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show that termination is in the best interest of the child. *Id.* And finally, the parent bears the burden to show whether a discretionary exception applies that should preclude termination. *Id.* We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

On the first step, the parents argue that the juvenile court erred in terminating their rights under Iowa Code section 232.116(1)(h), pointing to their improved housing, the father's employment and mother's disability income, their bond with their sons, and the strong support they have from their church friends. They contend "that the record in this case does not rise to the level of proof

necessary to warrant termination of their parental rights." But we agree with the juvenile court that the State proved this ground for termination.

The first three elements of this ground for termination are not in dispute—the sons are under three years old, were adjudicated in need of assistance, and have been removed from the home for more than six of the last twelve months. *See* Iowa Code § 232.116(1)(h)(1)–(3). And on the fourth element, we find clear and convincing evidence shows the sons could not be returned to the mother and father's custody at the "present time." *Id.* § 232.116(1)(h)(4); see also *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (explaining that the issue is whether the sons could be returned "at the time of the hearing").

At the termination hearing, the father conceded that the sons could not be returned home at that time, testifying that he "would like another couple weeks to work on the house . . . because we still need to baby proof the house a little more." While the mother and father have made progress in the cleanliness of their home, the HHS worker testified that she too was still concerned with "two crawling infants in the shape that the house is as it" stood at the time of the hearing. And based on the latest photographs of the home provided in the record, we share the same concern.

But more important, the mother and father were both still struggling with basic parenting skills needed to maintain a safe environment, especially proper feeding and diaper changing, at the time of the hearing. Despite extensive services trying to teach them these basic skills, neither parent seems able to retain and apply the knowledge. They fail to realize when a diaper needs to be changed and how to do so or when a son is hungry and how to prepare and feed from a

bottle. Indeed, their six-year-old daughter appears to know better how to handle these tasks and has been observed trying to offer suggestions to the parents.

So we agree with the juvenile court that there is clear and convincing evidence that the sons could not be returned to the mother and father's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("[H]ope" that a parent "might eventually be able to parent [the child] safely and consistently" based on some improvements is "gambl[ing] with the children's future by asking them to continuously wait for a stable biological parent." (cleaned up)). And thus, the State proved this ground of termination.

### III.    Best Interests of the Children

The parents also challenge the second step—whether it is in the sons' best interests to terminate their parental rights. In arguing that termination is not in the sons' best interests, the mother and father argue that "[t]he record shows that [they] have adequate income to support the children and were residing in an appropriate residence." They contend that the sons have a close bond with them and that "termination would be detrimental" to the sons because of this bond.

The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the sons' long-range and immediate best interests. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

The parents' best-interests arguments overlook the serious safety concerns that prevented returning the sons to their custody at the time of the termination hearing. Even if the parents are correct that they have sufficient income and housing (despite the father's contrary testimony about the state of their home), as discussed above, the parents have shown repeatedly that they cannot safely care for the sons on their own. And we agree with the juvenile court that the prospects of that changing with six more months are dim for either parent given the many unsuccessful attempts up to that point.

Meanwhile, the sons are doing well in foster care placement. HHS reports that both sons "have thrived in foster care and are doing amazing." We do not doubt that the mother and father love the sons, but it is in the sons' physical, mental, and emotional best interest to terminate the mother's and father's parental rights. We thus affirm the juvenile court's termination of the mother and father's parental rights.

**AFFIRMED ON BOTH APPEALS**.